UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM J. COKE, SR.,

                              Plaintiff,

                                                        9:09-CV-0047
v.                                                      (GTS/GHL)

BRIAN S. FISHER, Commissioner, NYS DOCS;
KENNETH PERLMAN, Warden, Mid-State C.F.;
DR. JOHN DOE, Psychiatrist, Mid-State C.F.; and
ROBERT ERCOLE, Warden, Green Haven C.F.,

                              Defendants.
_____

APPEARANCES:

WILLIAM J. COKE, SR., 02-B-1082
  Plaintiff, *Pro Se*
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court for review, in this *pro se* prisoner civil rights action brought pursuant

to 42 U.S.C. § 1983, is the Second Amended Complaint of William J. Coke, Sr. ("Plaintiff").  (Dkt. No.

8.)  For the reasons set forth below, Plaintiff's Second Amended Complaint is *sua sponte* dismissed

pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may

be granted.

## I.        RELEVANT PROCEDURAL BACKGROUND

        Plaintiff, who is currently incarcerated at Green Haven Correctional Facility ("Green Haven

C.F."), commenced this action on or about March 14, 2008, by filing a civil rights Complaint in the

Southern District of New York, together with an application to proceed *in forma pauperis*. (Dkt. Nos. 1, 2; see also Dkt. No. 4, at 14.) By Order of Chief Judge Kimba M. Wood of the Southern District, Plaintiff's *in forma pauperis* application was granted and Plaintiff was directed to submit an amended complaint to cure defects found in the Complaint. (Dkt. No. 4.) On August 13, 2008, Plaintiff submitted an Amended Complaint, which was reviewed by Chief Judge Wood and was also found to be deficient. (Dkt. Nos. 5, 6.) Plaintiff was given an opportunity to submit a Second Amended Complaint. (Dkt. No. 6.) On November 1, 2008, Plaintiff did so. (Dkt. No. 8, at 7.) Upon reviewing the Second Amended Complaint, Chief Judge Wood concluded that the "majority of Plaintiff's claims appear to arise out of events which are alleged to have taken place in the Mid-State Correctional Facility," located in the Northern District of New York. (Dkt. No. 9.) Accordingly, on January 14, 2009, Chief Judge Wood transferred Plaintiff's action to this District for further review. (*Id.*)

## II.    RELEVANT LEGAL STANDARD

Because the Southern District of New York previously determined that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, the Court must now consider the sufficiency of the allegations set forth in the Second Amended Complaint in light of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Section 1915(e)(2)(B) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). As a result, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the Court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the Court may permit the plaintiff to proceed with this action *in forma pauperis*. *See id.*

Similarly, under 28 U.S.C. § 1915A(b), a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (citation omitted); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both Sections 1915 and 1915A are available to evaluate prisoner *pro se* complaints).

Plaintiff brought this action under 42 U.S.C. § 1983 ("Section 1983").  Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *German v. Fed. Home Loan Mortg. Corp*., 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 [1990] [quoting 42 U.S.C. § 1983]); *see also Myers v. Wollowitz*, 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) ("[Section 1983] is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.").

After the pleadings are closed, a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is properly brought as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) [citations omitted]; *see also* Fed. R. Civ. P. 12(b), 12(c).  However, the motion for judgment on the pleadings is then decided according to the same standard as is a motion to dismiss for failure to state a claim.  *Id.*

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga*

*County*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations omitted].

With regard to the first ground, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Id*. at 212, n.18 [citations omitted].[1]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id*. at 212, n.20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id*. at 212, n.21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id*. at 213, n.22 [citations omitted].

Most notably, in *Bell Atlantic Corporation v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint

---

[1]     *See also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965 [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*. [citations omitted].[2]

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[3] It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P.

---

[2]     *See also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.").

[3]     *See*, *e.g.*, *Jacobs v. Mostow*, 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

8(a)(2).  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted; emphasis added].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim.  *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added].  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[4]

Finally, in reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.  This standard is applied with even greater force where the plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se*.  However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of

---

[4]    For example, in *Erickson*, the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care.  *Erickson*, 127 S. Ct. at 2199-2200.  Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a requirement that had been imposed by the district court).  This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief.  Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatis C constitutes having a serious medical need for purposes of the Eighth Amendment.  *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).  The important thing is that, in *Erickson*, even the *pro se* plaintiff was required to allege some sort of fact.

pleadings (as the Second Circuit has observed),[5] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[6]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[7]  Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp.2d at 214, n.28 [citations omitted].

### III.    SUMMARY OF PLAINTIFF'S SECOND AMENDED COMPLAINT

Liberally construed, Plaintiff's Second Amended Complaint alleges as follows.

On November 15, 2002, while Plaintiff was held in Mid-State Correctional Facility ("Mid-State C.F."), Defendant Perlman, the Superintendent of Mid-State C.F., violated Plaintiff's rights to due process and equal protection by, with a discriminatory animus, allowing police detectives to use a room at Mid-State C.F. to interrogate Plaintiff for four hours despite the fact that there "was no mention of

---

[5]     *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008); *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

[6]     *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with FED. R. CIV. P. 8); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir. 1995).

[7]     *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted], *accord*, *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983); *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

any existing Warrent [*sic*] [or] pending prosecution" against Plaintiff.  (Dkt. No. 8 at 8, 19, 22.)[8]

Furthermore, Defendant Dr. John Doe, a psychiatrist at Mid-State C.F., violated Plaintiff's rights to due

process and equal protection by failing to either conduct or order a competency examination before

Plaintiff stood trial on February 2, 2003 (on charges resulting from the interrogation on November 15,

2002).  (*Id*. at 2, 9-11, 21.)  Moreover, the New York State Department of Correctional Services

("DOCS"), as well as Mid-State C.F. and Green Haven C.F., violated Plaintiff's rights under the

Americans with Disabilities Act ("ADA") and the Rehabilitation Act, by mishandling his mental health

care since November 15, 2002.  (*Id*. at 23.)[9]  In addition, Defendants Fisher and/or Perlman violated

Plaintiff's right to due process and his right of access to the courts by (1) doing "nothing to correct the

problems" raised by Plaintiff in his grievances complaining of these violations between approximately

January 26, 2006, and July 16, 2007, and (2) detaining Plaintiff for twelve weeks in keep-lock

confinement at some point, during which time he was deprived of access to legal materials that would

have enabled him to receive a reversal of his criminal conviction stemming from the wrongful

interrogation on November 15, 2002.  (*Id*. at 24.)  As a result of these (alleged) violations, Plaintiff

seeks monetary damages.  (*Id*. at 28.)

Finally, it bears noting that Plaintiff alleges that all of his allegations dating back to November

15, 2002 should be deemed timely filed because of mental impairments from which he suffered

between November 15, 2002, and the date of filing of this action, on January 14, 2009.  (*Id*. at 9-11,

---

[8]    In his Amended Complaint, which was superseded in all respects by his Second Amended Complaint, Plaintiff alleged that Defendant Perlman's actions "result[ed] in a 25 yr. conviction for things that never occurred which still can be proven."  (Dkt. No. 5, at 6.)

[9]    In his Amended Complaint, which (again) was superseded in all respects by his Second Amended Complaint, Plaintiff alleged that, on November 15, 2002, he "was taken advantage of while under the care of Office of Mental Health (OMH), at Mid-State Corr. Fac." when he was allowed to be interrogated by police investigators despite his mental disability.  (Dkt. No. 5, at 4-5.)

23.)  It also bears noting, while Plaintiff names Robert Ercole, the Superintendent of Green Haven C.F.,

as a Defendant in the caption of his Second Amended Complaint, the Second Amended Complaint

alleges no facts plausibly suggesting any wrongdoing by Defendant Ercole.  (*See generally* Dkt. No.

8.)[10]

## IV.    ANALYSIS

### A.    Plaintiff's Claims Against Defendant Perlman Arising from the Interrogation

As stated above in Part III of this Decision and Order, Plaintiff alleges that, on November 15,

2002, while Plaintiff was held in Mid-State C.F., Defendant Perlman, the Superintendent of Mid-State

C.F., violated Plaintiff's rights to due process and equal protection by, with a discriminatory animus,

allowing police detectives to use a room at Mid-State C.F. to interrogate Plaintiff for four hours despite

the fact that there "was no mention of any existing Warrent [*sic*] [or] pending prosecution" against

Plaintiff.  (Dkt. No. 8 at 8, 19, 22.)

More specifically, with regard to Plaintiff's due process claim, he alleges that, by allowing

police investigators to interrogate him in a closed room for four hours, Defendant Perlman "deprived

[him] of his liberty that is not reasonably related to legitimate Penological interest."  (Dkt. No. 8, at 20.)

However, even assuming that Defendant Perlman placed Plaintiff in a closed room with police

investigators for a period of four hours, that fact would not give rise to a claim for denial of due process

under either the Fifth or Fourteenth Amendments.

Turning to Plaintiff's equal protection claim, the Equal Protection Clause of the Fourteenth

Amendment requires that the government treat all similarly situated people alike.  *City of Cleburne v.

Cleburne Living Ctr.* 473 U.S. 432, 439 (1985).  Specifically, the Equal Protection Clause "bars the

---

[10]    For a more complete statement of Plaintiff's claims, reference is made to the Second
Amended Complaint.

government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, *or malicious or bad faith intent to injure a person*.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (emphasis in original) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 [2d Cir. 1980]). Here, Plaintiff has not alleged facts plausibly suggesting that Defendant Perlman subjected Plaintiff to selective adverse treatment (compared to other similarly situated individuals) based on impermissible considerations such as race, religion, an intent to inhibit Plaintiff from (or punish him for) exercising his constitutional rights, or a malicious or bad faith intent to injure Plaintiff. (*See generally* Dkt. No. 8.)

In any event, even if Plaintiff's allegations against Defendant Perlman were found to support a Section 1983 claim, his allegations against Defendant Perlman are time-barred. In New York State, the statute of limitations for Section 1983 claims is three years from the date of accrual. *See, e.g., Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir. 2004). Section 1983 claims accrue when a plaintiff learns or has reason to learn of the alleged injury that forms the basis of the action. *See, e.g., Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir. 1994). There are occasions when the statute of limitations may be tolled; tolling of the statute of limitations as applied to Section 1983 actions is governed by state tolling provisions. *Wallace v. Kato,* 549 U.S. 384, 394 (2007); *Singleton v. New York,* 632 F.2d 185, 191 (2d Cir. 1980) (quoting *Board of Regents v. Tomanio,* 446 U.S. 478 [1980]) (noting that state tolling rules, like state limitations periods, govern federal actions brought under 42 U.S.C. § 1983).

Plaintiff's claims against Defendant Perlman arose on November 15, 2002, the date on which Defendant Perlman (allegedly) allowed Plaintiff to be interrogated in a closed room at Mid-State C.F. for four hours. As a result, the statute of limitations expired three years later, on November 15, 2005.

The date on which a prisoner's complaint is considered "filed" is the date on which he gives that complaint to prison officials for mailing to the District Court.[11]  As more fully discussed in Chief Judge Wood's prior Orders (*see* Dkt. Nos. 4, 6), Plaintiff's original Complaint was filed, at the latest, on April 14, 2008[12]–approximately two-and-one-half years after the statute of limitations had expired.  Thus, as Plaintiff was advised in Chief Judge Wood's prior Orders (*see id.*), Plaintiff's action against Perlman is time-barred unless the statute of limitations was tolled.

In accordance with Chief Judge Wood's Orders, Plaintiff now alleges, in his Second Amended Complaint, that his action against Defendant Perlman should be considered timely because Plaintiff has mental impairments.  (Dkt. No. 8, at 9.)  More specifically, Plaintiff alleges that, during the relevant time period, he suffered from a major depressive bipolar disorder, heard voices, and was diagnosed with an anti-social disorder.  (*Id.*)  As the Southern District has explained:

> [NY] CPLR [§] 208 provides for tolling when 'a person entitled to commence an action [was] under a disability because of infancy or insanity at the time the cause of action accrues . . . . '  While the words of the statute, taken at face value, might appear to be broad enough to apply to any person suffering from a debilitating mental illness, the New York Court of Appeals has interpreted the statute more narrowly. *McCarthy v. Volkswagen of Am.,* 55 N.Y.2d 543 (1982). The *McCarthy* Court reviewed the legislative history of the provision and concluded that the legislature intended that [NY] CPLR [§] 208 be 'narrowly interpreted.' *Id.* at 548. In the words of the Court: 'we believe that the Legislature meant to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society.' *Id.* at 548-549.

*Vallen v. Carrol*, 02-CV-5666, 2005 WL 2296620, at *3 (S.D.N.Y. Sep. 20, 2005).

As a result, in order to benefit from the tolling provision of NY CPLR § 208, Plaintiff must

---

[11]     *Houston v. Lack*, 487 U.S. 266 (1988); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993).

[12]     Although Plaintiff's original Complaint was not dated, the Southern District has reported that the postmark date on the envelope that contained the Complaint for mailing to the Southern District was April 14, 2008.  (Dkt. No. 4, at 14.)

allege facts plausibly suggesting that the disability of insanity was continuous during the relevant period. *McEachin v. City of New York*, 03-CV-6421, 2007 WL 952065, at *4 (E.D.N.Y. Mar. 29, 2007) (plaintiff did not demonstrate that he suffered from insanity continuously for the time period he seeks to toll); *Basher v. Madonna Realty Corp.*, 01-CV-5116, 2007 WL 174130, at *3 (E.D.N.Y. Jan. 19, 2007); *Carter v. Doe*, 05-CV-8432, 2006 WL 2109461, at *3 (S.D.N.Y. July 26, 2006). "'If the plaintiff had a lucid interval of significant duration, preceded and followed by a period of insanity, the toll is lost and is not resurrected when a plaintiff relapses into insanity.'" *Carter*, 2006 WL 2109461, at *3 (quoting *Graboi v. Kibel*, 432 F.Supp. 572, 579 [S.D.N.Y.1977]).

Here, Plaintiff has not alleged facts plausibly suggesting that he suffered from insanity *continuously* from the time the cause of action accrued until the time he filed this action. Granted, Plaintiff alleges that, in 2003 and 2004, he contacted various agencies seeking assistance with his claims while at the same time being involved in the "Appellate process," presumably for his criminal prosecution. (Dkt. No. 8, at 10.) Plaintiff further alleges that, with all of these events going on, he "had no mental fortitude to address both the injustice at trial and the blatant discrimination inflicted upon [him] by Mr. Perlman." (*Id.*) However, these allegations do not plausibly suggest that Plaintiff was incapable of pursuing his legal rights during this period of time; rather, they only plausibly suggest that he was overwhelmed in attempting to do so. Moreover, Plaintiff also alleges "[w]hile struggling to present [his] innocence from Feb. 11, [20]04 until Dec. 11, [20]06 . . . [he] sought Habeas Corpus relief where an Article 78 was submitted for injury suffered Jan. 23, [20]06 to April [20]07." (*Id.*) As a result, based on Plaintiff's own factual allegations, he was lucid enough to seek relief in state court.

It should be noted that Plaintiff was also lucid enough in 2006 to file two separate habeas corpus petitions in federal court. More specifically, a search of the Federal Judiciary's Public Access

to Court Electronic Records Service (PACER) of "Coke, William J." shows that Plaintiff filed two petitions for habeas corpus relief in the Western District of New York in 2006, displaying his ability to advance his own legal interests in 2006.  *See Coke v. Superintendent*, 1:06-CV-0811 (W.D.N.Y.) and *Coke v. Niagra County Court*, 6:06-CV-6672 (W.D.N.Y.).[13]  Because Plaintiff was at least sporadically able to pursue his legal interests during the relevant time period, he cannot show that his alleged disability was continuous until the time he filed this action.

Furthermore, even if Plaintiff could establish that his mental impairments were present continuously from the time his claims accrued until he filed this action, his mental impairments do not constitute insanity under NY CPLR § 208.  *See McEachin v. City of New York*, 03-CV-6421, 2007 WL 952065, at *4-5 (E.D.N.Y. March 29, 2007) (hearing voices, depression, eating and sleeping disorders, strained personal relationships and multiple attempted suicide insufficient to invoke tolling provisions of NY CPLR § 208 when plaintiff was able to understand or protect his legal rights); *Wenzel v. The Nassau County Police Dep't,* 93-CV-4888, 1995 WL 836056, at *4 (E.D.N.Y., Aug. 5, 1995) (apathy, depression, posttraumatic neurosis, psychological trauma and repression therefrom, or mental illness alone are insufficient to invoke the tolling provisions of NY CPLR § 208).  The Court therefore finds that plaintiff's allegations of mental suffering–namely, major depressive disorder, hearing voices, bipolar disorder, and anti-social disorder–do not satisfy New York's tolling provision regarding insanity.[14]

---

[13]    A review of the docket in both cases shows that case number 1:06-CV-0811 is ongoing; the petition filed in case number 6:06-CV-6672 was construed as an amended petition for case number 1:06-CV-811; the amended petition was docketed in 1:06-CV-811, and 6:06-CV-6672 was closed.

[14]    The "legislative history reveals that the Advisory Committee deliberately rejected a toll for 'mental illness,' opting to use the stronger term 'insanity' in [NY CPLR] § 208."  *See Reyes v. City of New York*, 00-CV-1050, 2000 WL 1505983, at *2 (S.D.N.Y. Oct. 6, 2000) (citing *Dumas v. Agency for Child Dev.,* 569 F. Supp. 831, 833 [S.D.N.Y. 1983]).

For each of these alternative reasons, all claims against Defendant Perlman arising from the interrogation are dismissed.

### B.    Plaintiff's Claims Against Defendant Ercole

As stated above in Part II of this Decision and Order, while Plaintiff names Robert Ercole, the Superintendent of Green Haven C.F., as a Defendant in the caption of his Second Amended Complaint, the Second Amended Complaint alleges no facts plausibly suggesting any wrongdoing by Defendant Ercole.  (*See generally* Dkt. No. 8.)

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff."  *Cipriani v. Buffardi*, 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (Kahn, J.) (citing *Gonzalez v. City of New* York, 97-CV-2246, 1998 WL 382055, at *2 [S.D.N.Y. Jul. 9, 1998], *Crown v. Wagenstein*, 96-CV-3895, 1998 WL 118169, at *1 [S.D.N.Y. Mar. 16, 1998] [mere inclusion of warden's name in complaint insufficient to allege personal involvement], and *Taylor v. City of New York,* 953 F. Supp. 95, 99 [S.D.N.Y. 1997]).

Stated differently, a defendant must be personally involved in an alleged constitutional violation, in order to incur liability under Section 1983.  *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  A defendant is "personally involved" if he or she "directly participated in the infraction."  *Wright*, 21 F.3d at 501.  If the defendant is a supervisory official (such as a DOCS Commissioner, Deputy Commissioner, or facility superintendent) a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct.[15]  In other words,

---

[15]    *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

supervisory officials may not be held liable merely because they held a position of authority.[16]  Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[17]

Here, even when construed with the utmost of liberality, Plaintiff's Second Amended Complaint has failed to allege facts plausibly suggesting any such personal involvement on the part of Defendant Ercole.  (*See generally* Dkt. No. 8.)

As a result, all claims against Defendant Ercole are dismissed.

## C.    Plaintiff's Claims Against Dr. John Doe

As stated above in Part III of this Decision and Order, Plaintiff alleges that Defendant Dr. John Doe, who was a psychiatrist at Mid-State C.F., violated Plaintiff's rights to due process and equal protection by failing to either conduct or order a competency examination before Plaintiff stood trial on February 2, 2003 (on charges resulting from the interrogation on November 15, 2002).  (Dkt. No. 8, at 2, 9-11, 21.)  However, in his capacity as a psychiatrist at Mid-State C.F., Defendant Dr. John Doe would not have been responsible for ordering a competency examination for Plaintiff in connection with Plaintiff's criminal proceeding in state court.  Rather, at most, he was responsible for Plaintiff's mental health *treatment* at Mid-State C.F.  For this reason, Plaintiff's allegations against Defendant Dr.

---

[16]    *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

[17]    *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

John Doe fail to state a claim upon which relief may be granted.

In any event, even if Plaintiff's allegations against Defendant Dr. John Doe were found to support a Section 1983 claim, the statute of limitations governing such a Section 1983 claim is three years, as explained above in Part IV.A. of this Decision and Order.  Furthermore, as also explained above, Plaintiff's allegations of mental impairments do not satisfy New York State's tolling provision regarding insanity; and even if they did, Plaintiff's mental suffering was not continuous during the period that he seeks to toll.  As a result, any actionable claims against Defendant Dr. John Doe would be barred by the statute of limitations.

For each of these alternative reasons, all claims against Defendant Dr. John Doe are dismissed.

**D.    Plaintiff's Claims Against Defendant Fisher**

As stated above in Part III of this Decision and Order, Plaintiff alleges Defendant Fisher failed to correct the wrongdoing of his subordinates, including Defendant Perlman's "interference" with Plaintiff's right to due process and his right to access to the courts during his twelve-week keep-lock confinement.  (Dkt. No. 8, at 24.)  Again, a defendant in a supervisory capacity may be "personally involved" within the meaning of Section 1983 only if he (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.

Here, even when construed with the utmost of liberality, Plaintiff's Second Amended Complaint has failed to allege facts plausibly suggesting any such personal involvement on the part of Defendant Fisher.  (*See generally* Dkt. No. 8.)

As a result, all claims against Defendant Fischer are dismissed.

### E.    Plaintiff's Claims Under the ADA and Rehabilitation Act

As stated above in Part III of this Decision and Order, Plaintiff alleges that DOCS, as well as Mid-State C.F. and Green Haven C.F., violated Plaintiff's rights under the ADA and the Rehabilitation Act, by mishandling his mental health care since November 15, 2002. (Dkt. No. 8, at 23.)

To state a claim under Title II of the ADA, a plaintiff must show that (1) he or she is a qualified individual with a disability, (2) he or she is being excluded from participation in, or being denied the benefits of some service program, or activity by reason of his or her disability, and (3) the entity which provides the service, program or activity is a public entity. *Smith v. Masterson*, 538 F. Supp.2d 653, 657 (S.D.N.Y. 2008) (citing *Clarkson v. Coughlin,* 898 F. Supp. 1019, 1037 [S.D.N.Y. 1995]). To state a cause of action under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), the prisoner must show:

> (1) that he has a disability for purposes of the Rehabilitation Act; (2) that he was "otherwise qualified" for the benefit that has been denied; (3) that he has been denied the benefits 'solely by reason' of his disability; and (4) that the benefit is part of a 'program or activity receiving Federal financial assistance.'

*Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir. 1998) (quoting *Flight v. Gloeckler,* 68 F.3d 61, 63 [2d Cir. 1995]).

Here, even when construed with the utmost of liberality, Plaintiff's Second Amended Complaint has failed to allege facts plausibly suggesting any violation of either Title II of the ADA or the Rehabilitation Act. (*See generally* Dkt. No. 8.)

In any event, even if Plaintiff's Second Amended Complaint did allege such facts, the bulk of his ADA and Rehabilitation Act claims would be untimely. As Plaintiff was previously advised by Chief Judge Wood of the Southern District of New York, the statute of limitations for actions filed

pursuant to Title II of the ADA and the Rehabilitation Act is three years. (Dkt. No. 6, at 12-13 [citing cases].) As a result, to the extent that Plaintiff raises ADA or Rehabilitation Act claims arising out of events that occurred on November 15, 2002, those claims would be barred by the statute of limitations. Furthermore, as more fully discussed above in Part IV.A. of this Decision and Order, Plaintiff's allegations of mental impairments do not satisfy New York State's tolling provision regarding insanity; and even if they did, Plaintiff's mental suffering was not continuous during the period that he seeks to toll.

For each of these alternative reasons, Plaintiff's claims pursuant to the Rehabilitation Act and/or Title II of the ADA are dismissed.

### F.    Plaintiff's Claims Against Defendants Perlman and Fisher Arising from Grievance Process and/or Criminal Appeal Process

As stated above in Part III of this Decision and Order, Plaintiff alleges that, Defendants Fisher and/or Perlman violated Plaintiff's right to due process and his right of access to the courts by (1) doing "nothing to correct the problems" raised by Plaintiff in his grievances complaining of these violations between approximately January 26, 2006, and July 16, 2007, and (2) detaining Plaintiff for twelve weeks in keep-lock confinement at some point, during which time he was deprived of access to legal materials that would have enabled him to receive a reversal of his criminal conviction stemming from the wrongful interrogation on November 15, 2002. (Dkt. No. 8, at 24.)

Inmates have a First Amendment right to "petition the Government for a redress of grievances."[18] This right, which is more informally referred to as a "right of access to the courts,"

---

[18]    *See* U.S. CONST. amend I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *modified on other grounds*, *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (citations omitted). "However, this right is not 'an abstract, freestanding right to a law library or legal assistance' and cannot ground a Section 1983 claim without a showing of 'actual injury.'" *Collins v. Goord,* 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351). As a result, to state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury. *Lewis*, 518 U.S. at 353; *Renelique v. Duncan*, 03-CV-1256, 2007 WL 1110913, at *9 (N.D.N.Y. Apr. 12, 2007) (Strom, J.) (citing *Howard v. Leonardo*, 845 F. Supp. 943, 946 [N.D.N.Y. 1994] [Hurd, M.J.]).

To the extent that Plaintiff attempts to cast this interference claim as a violation of either procedural or substantive due process, the Court rejects that attempt. With respect to any substantive due process claim that Plaintiff is attempting to assert, the Supreme Court has repeatedly held, "if a constitutional claim is covered by a specific constitutional provision . . . [such as the First Amendment], the claim must be analyzed under the standard appropriate to that specific provision, not under the [more generalized notion] of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 392-94 [1989]).[19] With respect to any procedural due process claim that Plaintiff is attempting to assert, the hardships that Plaintiff alleges–which stem from his placement in keep-lock confinement for twelve weeks, or eighty-four

---

[19]    *See also Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (offering similar recitation of law before refusing to analyze claim of improper search under Fourteenth Amendment); *accord*, *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000).

days–were not so atypical and significant (in relation to the ordinary incidents of prison life) as to give rise to a liberty interest protected by the Fourteenth Amendment.[20]  As a result, Plaintiff's interference claim is properly construed as arising only under the First Amendment.

Here, even when construed with the utmost of liberality, Plaintiff's Second Amended Complaint has failed to allege facts plausibly suggesting that Plaintiff was prevented (by Defendants Perlman and/or Fisher) from filing grievances, or appealing to DOCS' Central Office Review Committee ("CORC") from the (alleged) non-response to those grievances.  (*See generally* Dkt. No. 8.)  Rather, Plaintiff's Second Amended Complaint, and the attachments thereto, plausibly suggest that he was able to file an appeal with CORC.  (*Id.* at ¶ IV.E.3. [swearing, "I appealed all the way to Albany, New York"]; *id.* at 27 [attaching copy of decision by CORC].)[21]

---

[20]    *Cf. Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr. 17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population or keep-lock confinement, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord*, *Husbands v. McClellan*, 990 F. Supp. 214, 217-19 (W.D.N.Y. 1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population or keep-lock confinement); *Warren v. Irvin*, 985 F. Supp. 350, 353-56 (W.D.N.Y. 1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population or keep-lock confinement); *Ruiz v. Selsky*, 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y. 1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population or keep-lock confinement); *Horne v. Coughlin*, 949 F. Supp. 112, 116-17 (N.D.N.Y. 1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population or keep-lock confinement); *Nogueras v. Coughlin*, 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug. 27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population or keep-lock confinement); *Carter v. Carriero*, 905 F. Supp. 99, 103-04 (W.D.N.Y. 1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population or keep-lock confinement).

[21]    It is important to note that any failure by a facility's Inmate Grievance Review Committee or superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process.  7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York*, 198 F. Supp.2d 546, 549 (S.D.N.Y. 2002), *vacated and remanded on other grounds*, 380

Similarly, Plaintiff's Second Amended Complaint has failed to allege facts plausibly suggesting that Defendants Fisher or Perlman were responsible for his being placed in keep-lock confinement, nor does he allege even when or where he was keep-locked. (*Id.*) It bears noting that Plaintiff's criminal conviction was affirmed by the Fourth Department on the merits. *See People v. Coke*, 817 N.Y.S.2d 545 (N.Y. App. Div., 4th Dep't 2006), *leave to appeal denied*, 7 N.Y.3d 711 (N.Y. 2006). This fact indicates that the denial of Plaintiff's criminal appeal was attributable to the lack of merit of that appeal, not due to any misconduct by prison officials that prevented Plaintiff from filing that appeal. *See Covino v. Reopel,* No. 96-2295, 1997 WL 138856 at *1 (2d Cir. Mar. 18, 1997) (prisoner could not establish denial of access to courts based on alleged destruction of his legal papers by prison officials because state court's affirmance of his conviction was attributable to the lack of merit of his claims, not to the misconduct of prison officials). It also bears noting that the Fourth Department indicated that Plaintiff had been able to file not only a brief but a "supplemental brief" in that criminal appeal. *Coke*, 817 N.Y.S.2d at 545.

As a result, Plaintiff's claims against Defendants Perlman and Fisher arising from the grievance process and/or criminal appeal process are dismissed.

## IV.     DISMISSAL WITHOUT LEAVE TO APPEAL

Generally, when the court dismisses a *pro se* action *sua sponte*, the plaintiff will be allowed to

---

F.3d 680 (2d Cir. 2004); *see, e.g., Croswell v. McCoy*, 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F. Supp.2d 431, 433 (W.D.N.Y. 2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); *Nimmons v. Silver*, 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.).

amend his action.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).

However, an opportunity to amend is not required where the plaintiff has already been afforded the

opportunity to amend.[22]  Here, Chief Judge Wood of the Southern District of New York generously

afforded Plaintiff *two* opportunities to amend his claims along with copious instructions on how to do

so.  In light of the fact that Plaintiff has now submitted three pleadings to the Courts for review, and

despite the fact that Plaintiff is proceeding *pro se*, the Court will not grant him a third opportunity to

amend his pleading.

    In any event, an opportunity to amend is also not required where "the problem with [plaintiff's]

causes of action is substantive" such that "[b]etter pleading will not cure it."  *Cuoco v. Moritsugu*, 222

F.3d 99, 112 (2d Cir. 2000) (finding that repleading would be futile) (citation omitted); *see also Cortec*

*Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable

to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.")

(affirming, in part, dismissal of claim with prejudice) (citation omitted); *cf. Gomez*, 171 F.3d at 796

(granting leave to amend is appropriate "unless the court can rule out any possibility, however unlikely

it might be, that an amended complaint would succeed in stating a claim."), *accord*, *Abbas*, 480 F.3d at

639.  Here, for the reasons discussed above, the Court finds that the problems with Plaintiff's claims

against Defendants are substantive.  As a result, providing an opportunity to amend would be futile.

---

    [22]    *Shuler v. Brown*, 07-CV-0937, 2009 WL 790973, at *5 & n.25 (N.D.N.Y. March 23, 2009) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J.) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord*, *Smith v. Fischer*, 07-CV-1264, 2009 WL 632890, at *5 & n.20 (N.D.N.Y. March 9, 2009) (Hurd, J., adopting Report-Recommendation by Lowe, M.J.); *Abascal v. Hilton*, 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan.130 2008) (Kahn, J., adopting, on de novo review, Report-Recommendation by Lowe, M.J.); *see also Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F. Supp.2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 8) is **DISMISSED** *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.  The clerk is directed to enter judgment dismissing this case.

Dated: June 24, 2009
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge